J-S47018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS LEONARD WALLACE | : | |
| | : | |
| Appellant | : | No. 51 MDA 2019 |

Appeal from the PCRA Order Entered December 10, 2018
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000250-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS LEONARD WALLACE | : | |
| | : | |
| Appellant | : | No. 52 MDA 2019 |

Appeal from the PCRA Order Entered December 10, 2018
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000213-2010

BEFORE: DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:　　　　　**FILED NOVEMBER 13, 2019**

Appellant Marcus Leonard Wallace appeals from the order dismissing his first petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. He raises numerous issues, primarily challenging trial and direct appeal counsels' advocacy. We affirm.

We state the facts and procedural history set forth by this Court's decision resolving Appellant's direct appeal.

In the early morning of December 10, 2009, an assailant broke into the bedroom of Consuela Wallace. A relative, sleeping in a neighboring bedroom, heard a loud crash and a male's voice arguing with Consuela. He later identified the male's voice as Consuela's adopted son, [Appellant]. Responding to the noise, the relative found Consuela lying on the floor of her bedroom, unconscious and bleeding from the head. Consuela later died from the blunt force trauma she had sustained to her head.

Investigators quickly focused on [Appellant] as a person of interest. Shortly thereafter, [Appellant] was arrested on an outstanding, unrelated warrant. Pursuant to this arrest, a sample of [Appellant's] DNA was taken and matched DNA found at the scene of the crime. Furthermore, while incarcerated on the unrelated charges, he provided a confession to the murder to officers who questioned him. He was charged with, among others, the first-degree murder of Consuela.

*Commonwealth v. Wallace*, 324 MDA 2015, 2016 WL 5417183, *1 (Pa. Super. filed Aug. 16, 2016) (unpublished mem.).

In addition to Appellant's confession,

[t]he Commonwealth presented evidence of [Appellant's] long-standing hostility towards Consuela. The Commonwealth also presented evidence that a vehicle owned by [Appellant] had been seen in the area of Consuela's house on the night of the murder. [Appellant's] blood was later found on the steering wheel of the car. A witness in the home identified a voice he heard arguing with Consuela moments before her murder as [Appellant's]. The blood tested was, among others, found on broken glass at Consuela's home and on her bedroom wall.

*Id.* at *6 (noting that the "evidence linking [Appellant] to the crime was [not] weak").

After lengthy proceedings concerning [Appellant's] competence to stand trial, a trial on these charges was held in January, 2015. The jury found him guilty of first-degree murder and burglary. [Appellant] immediately moved for a judgment of acquittal on the grounds of insufficient evidence. The trial court denied the oral motion, and subsequently sentenced [Appellant] to life

- 2 -

imprisonment without parole, with a concurrent term of imprisonment of 10 to 20 years on the burglary conviction.

*Id.* at *1. Appellant appealed, and this Court affirmed. Appellant filed a petition for allowance of appeal with our Supreme Court, which the Court denied on March 7, 2017.

On January 4, 2018, the PCRA court docketed Appellant's *pro se* PCRA petition. The PCRA court appointed counsel, who filed a petition to withdraw and no-merit letter under **Turner**/**Finley**[1] letter. Appellant filed a *pro se* response to appointed counsel's no-merit letter on August 16, 2018, which the PCRA court construed as an amended PCRA petition. On October 26, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss and granted PCRA counsel's petition to withdraw. Appellant requested, and the PCRA court granted, an extension of time to file a response to the Rule 907 notice by December 7, 2018. Appellant did not file a response.

In a single order listing both docket numbers, the PCRA court formally dismissed Appellant's PCRA petition on December 10, 2018. The order advised Appellant that he had a right to appeal within thirty days. Order, 12/10/18. The order did not instruct Appellant that he had to file multiple notices of appeal.

---

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

- 3 -

On January 2, 2019, the record reflects two notices of appeal filed, each with both of the above-captioned trial court docket numbers. On February 4, 2019, this Court issued a rule to show cause as to why the appeal should not be quashed pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). **See also Commonwealth v. Creese**, ___ A.3d ___, 2019 WL 3812232, *2 (Pa. Super. filed Aug. 14, 2019) (holding that a notice of appeal may only contain one docket number, and quashing appeal in which the appellant filed four separate notices of appeal, each listing all four docket numbers). Appellant filed a *pro se* response indicating that because the trial court had previously consolidated his cases, quashal was unnecessary. This Court discharged the rule to show cause and referred the matter to this panel.

As an initial matter, we address whether we must quash the appeal under **Creese** and **Walker**, which this Court summarized in **Commonwealth v. Stansbury**, ___ A.3d ___, 2019 WL 4197218, *2 (Pa. Super. filed Sept. 5, 2019), as follows:

> In [**Walker**], the High Court held that an appeal must be quashed if an appellant fails to file separate notices of appeal at each docket number implicated by an order resolving issues that involve more than one trial court docket will result in quashal of the appeal, as is the procedure indicated in the Note to Pa.R.A.P. 341. The **Walker** Court acknowledged that its decision "was contrary to decades of case law from this Court and the intermediate appellate courts[.]" Hence, the Court held that its ruling applied only prospectively, and directed that the Rules be amended to comport with the **Walker** decision.

**Stansbury**, ___ A.3d ___, 2019 WL 4197218, at *2 (citation omitted).

- 4 -

In **Stansbury**, the PCRA court "entered a single order, at both criminal case docket numbers under one caption, dismissing [the defendant's] PCRA petition and granting counsel's request to withdraw." **Id.** at *1. In pertinent part, the order advised the defendant "that he has thirty days from this day, to file **a** written **notice** of appeal to the Superior Court. Said **notice** of appeal must be filed with the Clerk of Courts of Philadelphia County-Criminal Division . . . ." **Id.** (emphasis in original and citation omitted).

The **Stansbury** Court refused to quash the appeal based on **Walker**, reasoning as follows:

> it has long been the law of this Commonwealth that the failure to file a timely appeal as a result of a breakdown in the court system is an exception to that general rule.
>
> We have many times declined to quash an appeal when the defect resulted from an appellant's acting in accordance with misinformation relayed to him by the trial court.
>
> In the case *sub judice*, the PCRA court advised [the defendant] that he could appeal the dismissal of his PCRA petition by filing within thirty days a notice of appeal from its order. The court, still referring to its order that disposed of a PCRA petition pending at two separate docket numbers, again utilized the singular in advising [the defendant] where to file "Said notice of appeal[.]" Hence, while **Walker** required that [the defendant] file separate notices of appeal at each docket number, the PCRA court informed [the defendant] that he could pursue appellate review by filing a single notice of appeal.

**Id.** at *2-*3 (citations omitted).

Here, similar to **Stansbury**, the PCRA court notified Appellant that he had a right to appeal the court's order denying PCRA relief. Order, 12/10/18. The PCRA court's order did not advise Appellant that he must file separate

- 5 -

notices of appeal, each with one docket number, pursuant to **Walker**. Under the circumstances, we conclude that the PCRA court's failure to advise Appellant properly of his appellate rights constitutes "a breakdown in court operations such that we may overlook" any **Walker** defect. **See Stansbury**, ___ A.3d at ___, 2019 WL 4197218, at *3.

Appellant filed a 216-page *pro se* brief raising twenty issues on appeal, which we have reordered to facilitate disposition:[2]

> 1. Whether the PCRA court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to address, nor raise, nor properly litigate the unlawful arrest of Appellant?
>
> 2. Whether the PCRA court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to properly litigate the issues of the search warrant for the buccal swab?
>
> 3. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to properly litigate May 16, 2012 order denying motion for suppression of buccal swab on direct appeal?
>
> 4. Whether PCRA court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to properly litigate motion to suppress the interrogation of counseled [Appellant] and on appeal?
>
> 5. Whether PCRA court erred in failing to grant relief and/or failing to find that counsel was ineffective for disregarding the confrontation clause violation at the October 20, 2011 hearing?

_____

[2] Because we agree with the PCRA court that some of Appellant's issues overlap, we have reordered Appellant's issues to parallel the PCRA court's opinion in part.

6. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for withdrawing the motion for change of venue/venire?

7. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to address nor correct the failure to *voir dire* juror #69 Darrell Kaiser to determine impartiality, U.S. Const amend XIV Pa Cons Art 1 § 9?

8. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for disregarding the NAPUE violation involving the purported CODIS search (Com. exhib #218)?

9. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to raise Pa. R. Crim. P. 600, Rule 600 permits the Court to order tolling of the days (computation)?

10. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to call defense witnesses?

11. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to impeach the Commonwealth's witnesses?

12. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to address nor litigate nor correct the issues identified in re: (1) expert witnesses granted but not paid and (2) expert witnesses granted and paid but not utilized nor used nor participate during trial?

13. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to properly litigate the inadmissible "Fear" statement and failed to address other hearsay issues on appeal under denial of motion to exclude prior bad acts?

14. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for conceding the necessary requisite elements of first degree murder at trial and on appeal?

15. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for disregarding the Commonwealth's failure to prove location of death purported in bill of particulars at trial?

16. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for disregarding, failing to object, nor request correction of the court's erroneous jury instruction and for reiterating the same during trial?

17. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to properly litigate [Appellant's] sufficiency of the evidence claim on appeal?

18. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to properly raise a weight of evidence claim?

19. Whether the court erred in failing to grant relief and/or failing to find that counsel was ineffective for failing to litigate motion to suppress the vehicle search on appeal?

20. Whether the court erred in failing to grant relief and/or failing to find that PCRA counsel was ineffective for failing to investigate nor address the Promega patent issue in relation to Powerplex 16 system, the DNA kit used in this case?

Appellant's Brief at 6-10 (some capitalization omitted).

The standard of review for an order resolving a PCRA petition is well-settled:

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Grayson*, 212 A.3d 1047, 1051 (Pa. Super. 2019) (citation omitted).

> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, the petitioner must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.

*Id.* at 1054 (citation omitted and some formatting altered).

In support of his first issue, Appellant contends that trial counsel was ineffective for failing to argue that the arrest was illegal. Appellant's Brief at 22. Specifically, Appellant asserts that the police improperly arrested him without a warrant and that a question of fact exists as to whether the preliminary hearing was held within forty-eight hours of his arrest. *Id.* at 23, 25-26, 33. Appellant also claims that his preliminary hearing counsel was ineffective for conceding that the Commonwealth had established a *prima facie* case against him. *Id.* at 29-30. He argues that the trial judge was biased against him. *Id.* at 32. Further, Appellant states that trial counsel was ineffective for not arguing that the Commonwealth fraudulently misrepresented a DNA test result and knowingly used false testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). *Id.* at 38. Appellant insists that he has established a pattern of illegal behavior by, and collusion between, the Commonwealth and Appellant's trial counsel. *Id.* at 40-43.

Appellant's second issue challenges trial counsel's advocacy regarding the Commonwealth's search warrant for a DNA sample, *i.e.*, a buccal swab, and the results of the DNA test on the sample. *Id.* at 53. Appellant raises

numerous issues with respect to whether the Commonwealth had probable cause for the warrant and the validity of the DNA test results. *Id.* at 53-69. Appellant's third issue similarly contends trial counsel was ineffective for not properly arguing the motion to suppress the buccal swab. *Id.* at 212-16.

In support of his fourth issue, Appellant argues that trial counsel was ineffective for failing to raise the following arguments in support of his motion to suppress the interrogation. *Id.* at 44. First, Appellant insists that he did not waive his right to counsel and that he never had counsel for the interrogation. *Id.* Second, he contends that the police illegally transported him from jail to the police barracks. *Id.* at 45. Third, Appellant argues that the amount set for his bail was excessive and unconstitutional. *Id.* at 45-50. Fourth, he asserts that he did not recall signing a waiver of his ***Miranda*** rights, and the Commonwealth should be compelled to produce the waiver form. *Id.* at 51-53.

Appellant's fifth issue is that trial counsel was ineffective for not objecting to the absence of the DNA lab technician at the suppression hearing. *Id.* at 70. In Appellant's view, the police officer who testified about the DNA test results was unqualified and his testimony should have been excluded. *Id.* at 70-71.

Appellant's sixth and seventh issues claim that trial counsel was ineffective for withdrawing his motion for a change of venue. *Id.* at 74. In Appellant's view, counsel erred by not using a previously-approved jury

consultant and by not requesting a *voir dire* of a "stealth juror."[3] *Id.* at 74-75, 203-07. Appellant alleges that given the negative publicity, the jury pool was biased against him. *Id.* at 75.

Appellant's eighth issue contends that the Commonwealth elicited false testimony in violation of **Napue**, because its witnesses lied regarding various aspects of the DNA sample. *Id.* at 78-86.

Ninth, Appellant argues counsel was ineffective for not filing a Pa.R.Crim.P. 600 challenge. *Id.* at 76. In Appellant's view, trial counsel was ineffective for causing some of the delays and other delays were caused by the trial court's failure to pay previously-approved expert witnesses. *Id.* at 77.

Appellant's tenth issue is that trial counsel was ineffective for not calling various witnesses for his defense. *Id.* at 87. Appellant contends that those witnesses would have proffered favorable testimony, which he summarized extensively. *Id.* at 87-106. Appellant's eleventh issue similarly argues that trial counsel was ineffective for not impeaching numerous witnesses. *Id.* at 106. Appellant discusses the witnesses that he believes should have been impeached. *Id.* at 106-32. Likewise, in support of his twelfth issue, Appellant

---

[3] A "stealth juror" is a "juror who hides a potentially disqualifying bias or conflict of interest in order to serve on a jury. A stealth juror may want to influence the outcome of the trial . . . ." **Hunter v. Ford Motor Co., Inc.**, 305 S.W.3d 202, 211 n.1 (Tex. App. 2009) (citation omitted).

argues that trial counsel was ineffective for not ensuring that previously-retained defense experts were paid. *Id.* at 197-99. Had those experts been paid, Appellant reasons, they would have issued favorable expert reports. *Id.* at 199. Appellant also questions trial counsel's selection and use of expert witnesses. *Id.* at 201.

Appellant's thirteenth claim is that trial counsel was ineffective for failing to make a proper objection to inadmissible hearsay and evidence of other prior bad acts. *Id.* at 132-33. Appellant also argues that direct appeal counsel was ineffective for not arguing the issue adequately on appeal. *Id.* at 134.

In support of his fourteenth issue, Appellant contends that trial counsel was ineffective for conceding "the first two"[4] elements for first-degree murder during counsel's closing argument. *Id.* at 135-36. Specifically, Appellant is referring to trial counsel's alternative argument that even if the jury concluded that Appellant was the culprit, he should be found guilty of only third-degree murder as the murder was unintentional. *Id.*; *see, e.g.*, N.T. Trial, 2/2/15, at 20-21 ("[Appellant] was just trying to get back in the house. And I suggest, ladies and gentlemen, on the night in question if he was trying to get back in the house to talk to his mother [*i.e.*, the victim,] and during that discussion

---

[4] Although Appellant did not specifically identify these particular elements, it appears he is referring to "(1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." *Commonwealth v. Thomas*, 54 A.3d 332, 335 (Pa. 2012) (citation omitted).

- 12 -

or argument whatever it may be and maybe we'll never know if he beat her to death with an object in her head, I suggest that is third-degree murder.").

For his fifteenth issue, Appellant maintains that trial counsel was ineffective for not arguing that the Commonwealth failed to establish the location of the victim's death. Appellant's Brief at 141. In support of his issue, Appellant discusses evidence that, in his view, provides contradicting information on the location of the victim's death. *Id.* at 143-45. Appellant posits that because the Commonwealth did not prove where the victim died, the trial court lacked jurisdiction over him. *Id.* at 142.

Appellant's sixteenth issue is that counsel was ineffective for not challenging the trial court's jury charge. *Id.* at 150. Specifically, the trial court had charged the jury that it must find that the victim is dead. *Id.* at 151. Appellant contends that the trial court should have instructed the jury that the Commonwealth had to prove that the victim's "death was unlawful beyond a reasonable doubt." *Id.* Appellant also injects a challenge to the sufficiency of evidence here, reasoning that the evidence did not support an unlawful death. *Id.* at 152-53. Appellant similarly asserts that trial counsel's closing arguments were erroneous because counsel also wrongly stated that the Commonwealth had to prove that the victim was deceased. *Id.* at 154. Appellant claims trial counsel should have made a different argument. *Id.* at 155-56.

Appellant's next two issues, his seventeenth and eighteenth, are that trial and direct appeal counsel were ineffective for not challenging and/or not "properly" challenging the sufficiency and weight of the evidence. *Id.* at 159, 172. Appellant discusses contradictory evidence and testimony that, in his view, counsel did not adequately challenge certain evidence during trial or on direct appeal. *Id.* at 159-72. Appellant contends that trial counsel should have challenged the weight of the evidence, and he reiterates the evidence and other errors that he believes should have resulted in a new trial. *Id.* at 172-89.

Appellant's nineteenth issue claims trial counsel was ineffective in litigating a motion to suppress the search of his vehicle. *Id.* at 189. Appellant identifies numerous arguments that he believes trial counsel should have raised, which would have resulted in the trial court granting the motion to suppress. *Id.* at 189-97.

After careful review of Appellant's arguments, the record, and the PCRA court's opinion, we affirm on the basis of the PCRA court's opinion for Appellant's first nineteen issues. *See* PCRA Ct. Op., 10/26/18, at 1-52. Without exhaustively recounting the PCRA court's opinion for every issue, the PCRA court generally concluded that Appellant misapprehended the factual record, thus undermining his legal arguments, and that Appellant failed to plead and prove one or more of the three factors for establishing counsel's ineffectiveness. *See Grayson*, 212 A.3d at 1054.

In addition to the PCRA court's reasoning, we add the following. Regarding Appellant's first issue, we note that even if counsel was ineffective regarding aspects of the preliminary hearing, any such defects are immaterial as a jury found Appellant guilty. *See Commonwealth v. Stultz*, 114 A.3d 865, 881-82 (Pa. Super. 2015) (noting that deficiency at preliminary hearing was harmless absent showing that the deficiency rendered verdict unreliable).

With respect to Appellant's thirteenth issue, which challenged trial counsel's advocacy in moving to exclude the inadmissible hearsay, we add that Appellant has not established a reasonable probability that but for such testimony, the outcome of his trial would have been different. *See Grayson*, 212 A.3d at 1054. As this Court previously noted, Appellant confessed to killing the decedent. *See Wallace*, 2016 WL 5417183 at *1.

With respect to the PCRA court's disposition of Appellant's fourteenth issue regarding trial counsel's alleged concession to elements of first-degree murder during closing arguments, we add the following observations. First, trial counsel had a reasonable basis for arguing that if Appellant was culpable, then the jury should find Appellant guilty of a lesser offense. *See Grayson*, 212 A.3d 1047 at 1051. Second, Appellant confessed to the crime, and the evidence linking him to the homicide was extensive. *See Wallace*, 2016 WL 5417183 at *1, *6. Even if trial counsel's statement constituted an improper concession, Appellant has not established a reasonable probability that but for that statement, the outcome of trial would have been different. *See Grayson*,

212 A.3d at 1054; *accord Commonwealth v. Carpenter*, 725 A.2d 154, 162-63 (Pa. 1999) (holding that absent proof that defense counsel had no reasonable basis for conduct or reasonable probability that outcome of trial would have been different, counsel could not be ineffective for statements made during closing).

We turn to Appellant's twentieth and final issue. Appellant contends that one of the patents on the DNA kit used by the Commonwealth is invalid. Appellant's Brief at 208. Appellant reasons that because the patent is invalid, the resulting DNA analysis must also be invalid. *Id.* Appellant, however, has not pled and proved that his claim "has not been previously litigated or waived." *See* 42 Pa.C.S. § 9543(a)(3). Even if Appellant's argument was properly before this Court, whether a patent is valid has no bearing on the accuracy of the DNA kit results inculpating Appellant. A patent simply is the right to exclude others from using the invention.[5] *See* 35 U.S.C. § 154. A patent's validity has no correlation with the accuracy of a particular patented process. For these reasons, Appellant's last claim lacks merit. Accordingly, having perceived no abuse of discretion or error of law, we affirm the PCRA court's order. *See Grayson*, 212 A.3d at 1051.

Order affirmed.

---

[5] Moreover, a state court cannot resolve the validity of a patent. *See* 28 U.S.C. § 1338.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/13/2019